# HISHON *v.* KING & SPALDING

No. 82–940.   Argued October 31, 1983—Decided May 22, 1984

70

*Emmet J. Bondurant* argued the cause and filed a brief for petitioner.

*Deputy Solicitor General Bator* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief for the United States et al. were *Solicitor General Lee, Assistant Attorney General Reynolds, David A. Strauss, Brian K. Landsberg, James W. Clute,* and *Philip B. Sklover.*

*Charles Morgan, Jr.,* argued the cause for respondent. With him on the brief were *J. Richard Cohen, Steven E. Vagle, Hamilton Lokey,* and *Gerald F. Handley.**

*Briefs of *amici curiae* urging reversal were filed for the American Association of University Women et al. by *Judith I. Avner* and *Anne E. Simon;* for the American Civil Liberties Union by *Samuel Estreicher,*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to determine whether the District Court properly dismissed a Title VII complaint alleging that a law partnership discriminated against petitioner, a woman lawyer employed as an associate, when it failed to invite her to become a partner.

I

A

In 1972 petitioner Elizabeth Anderson Hishon accepted a position as an associate with respondent, a large Atlanta law firm established as a general partnership. When this suit was filed in 1980, the firm had more than 50 partners and employed approximately 50 attorneys as associates. Up to that time, no woman had ever served as a partner at the firm.

Petitioner alleges that the prospect of partnership was an important factor in her initial decision to accept employment with respondent. She alleges that respondent used the possibility of ultimate partnership as a recruiting device to induce petitioner and other young lawyers to become associates at the firm. According to the complaint, respondent represented that advancement to partnership after five or six

*Burt Neuborne, Isabelle Katz Pinzler, E. Richard Larson, Charles S. Sims,* and *Mary L. Heen;* for the Anti-Defamation League of B'nai B'rith et al. by *Justin J. Finger, Meyer Eisenberg, Jeffrey P. Sinensky, Leslie K. Shedlin,* and *Nathan Z. Dershowitz;* for California Women Lawyers by *Elizabeth S. Salveson;* for the Dallas Association of Black Women Attorneys et al. by *Neil H. Cogan;* for the NAACP Legal Defense and Educational Fund, Inc., by *Jack Greenberg, Charles S. Ralston, Gail J. Wright,* and *Elizabeth Bartholet;* for the Women's Bar Association of Illinois et al. by *Paddy Harris McNamara, Susan N. Sekuler,* and *Jacqueline S. Lustig;* for the Women's Bar Association of Massachusetts by *Leah Sprague Crothers;* and for Robert Abrams et al. by *Paulette M. Caldwell, Lawrence S. Robbins,* and *Barbara S. Schulman.*

*Joseph D. Alviani* filed a brief for the New England Legal Foundation as *amicus curiae* urging affirmance.

years was "a matter of course" for associates "who receive[d] satisfactory evaluations" and that associates were promoted to partnership "on a fair and equal basis." Petitioner alleges that she relied on these representations when she accepted employment with respondent. The complaint further alleges that respondent's promise to consider her on a "fair and equal basis" created a binding employment contract.

In May 1978 the partnership considered and rejected Hishon for admission to the partnership; one year later, the partners again declined to invite her to become a partner.[1] Once an associate is passed over for partnership at respondent's firm, the associate is notified to begin seeking employment elsewhere. Petitioner's employment as an associate terminated on December 31, 1979.

B

Hishon filed a charge with the Equal Employment Opportunity Commission on November 19, 1979, claiming that respondent had discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 241, as amended, 42 U. S. C. § 2000e et seq. Ten days later the Commission issued a notice of right to sue, and on February 27, 1980, Hishon brought this action in the United States District Court for the Northern District of Georgia. She sought declaratory and injunctive relief, backpay, and compensatory damages "in lieu of reinstatement and promotion to partnership." This, of course, negates any claim for specific performance of the contract alleged.

The District Court dismissed the complaint on the ground that Title VII was inapplicable to the selection of partners

---

[1] The parties dispute whether the partnership actually reconsidered the 1978 decision at the 1979 meeting. Respondent claims it voted not to reconsider the question and that Hishon therefore was required to file her claim with the Equal Employment Opportunity Commission within 180 days of the May 1978 meeting, not the meeting one year later, see 42 U. S. C. § 2000e–5(e). The District Court's disposition of the case made it unnecessary to decide that question, and we do not reach it.

by a partnership.[2]   24 FEP Cases 1303 (1980).   A divided panel of the United States Court of Appeals for the Eleventh Circuit affirmed.   678 F. 2d 1022 (1982).   We granted certiorari, 459 U. S. 1169 (1983), and we reverse.

## II

At this stage of the litigation, we must accept petitioner's allegations as true.   A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley* v. *Gibson*, 355 U. S. 41, 45–46 (1957).   The issue before us is whether petitioner's allegations state a claim under Title VII, the relevant portion of which provides as follows:

> "(a) *It shall be an unlawful employment practice for an employer—*
>
> "(1) to fail or refuse to hire or to discharge any individual, or otherwise *to discriminate against any individual with respect to his* compensation, *terms, conditions, or privileges of employment, because of such individual's* race, color, religion, *sex,* or national origin."   42 U. S. C. § 2000e–2(a) (emphasis added).

### A

Petitioner alleges that respondent is an "employer" to whom Title VII is addressed.[3]   She then asserts that consid-

---

[2] The District Court dismissed under Federal Rule of Civil Procedure 12(b)(1) on the ground that it lacked subject-matter jurisdiction over petitioner's claim.   Although limited discovery previously had taken place concerning the manner in which respondent was organized, the court did not find any "jurisdictional facts" in dispute.   See *Thomson* v. *Gaskill*, 315 U. S. 442, 446 (1942).   Its reasoning makes clear that it dismissed petitioner's complaint on the ground that her allegations did not state a claim cognizable under Title VII.   Our disposition makes it unnecessary to consider the wisdom of the District Court's invocation of Rule 12(b)(1), as opposed to Rule 12(b)(6).

[3] The statute defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working

eration for partnership was one of the "terms, conditions, or privileges of employment" as an associate with respondent.[4] See § 2000e–2(a)(1). If this is correct, respondent could not base an adverse partnership decision on "race, color, religion, sex, or national origin."

Once a contractual relationship of employment is established, the provisions of Title VII attach and govern certain aspects of that relationship.[5] In the context of Title VII, the contract of employment may be written or oral, formal or informal; an informal contract of employment may arise by the simple act of handing a job applicant a shovel and providing a workplace. The contractual relationship of employment triggers the provision of Title VII governing "terms, conditions, or privileges of employment." Title VII in turn forbids discrimination on the basis of "race, color, religion, sex, or national origin."

Because the underlying employment relationship is contractual, it follows that the "terms, conditions, or privileges of employment" clearly include benefits that are part of an employment contract. Here, petitioner in essence alleges that respondent made a contract to consider her for partnership.[6] Indeed, this promise was allegedly a key contractual

---

day in each of twenty or more calendar weeks in the current or preceding calendar year," § 2000e(b), and a "person" is explicitly defined to include "partnerships," § 2000e(a). The complaint alleges that respondent's partnership satisfies these requirements. App. 6.

[4] Petitioner has raised other theories of Title VII liability which, in light of our disposition, need not be addressed.

[5] Title VII also may be relevant in the absence of an existing employment relationship, as when an employer *refuses* to hire someone. See § 2000e–2(a)(1). However, discrimination in that circumstance does not concern the "terms, conditions, or privileges of employment," which is the focus of the present case.

[6] Petitioner alleges not only that respondent promised to consider her for partnership, but also that it promised to consider her on a "fair and equal basis." This latter promise is not necessary to petitioner's Title VII claim. Even if the employment contract did not afford a basis for an implied condi-

provision which induced her to accept employment. If the evidence at trial establishes that the parties contracted to have petitioner considered for partnership, that promise clearly was a term, condition, or privilege of her employment. Title VII would then bind respondent to consider petitioner for partnership as the statute provides, *i. e.*, without regard to petitioner's sex. The contract she alleges would lead to the same result.

Petitioner's claim that a contract was made, however, is not the only allegation that would qualify respondent's consideration of petitioner for partnership as a term, condition, or privilege of employment. An employer may provide its employees with many benefits that it is under no obligation to furnish by any express or implied contract. Such a benefit, though not a contractual *right* of employment, may qualify as a "privileg[e]" of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all. Those benefits that comprise the "incidents of employment," S. Rep. No. 867, 88th Cong., 2d Sess., 11 (1964),[7] or that form "an aspect of the relationship between the employer and employees," *Chemical & Alkali Workers* v. *Pittsburgh Plate Glass Co.*,

---

tion that the ultimate decision would be fairly made on the merits, Title VII itself would impose such a requirement. If the promised consideration for partnership is a term, condition, or privilege of employment, then the partnership decision must be without regard to "race, color, religion, sex, or national origin."

[7] Senate Report No. 867 concerned S. 1937, which the Senate postponed indefinitely after it amended a House version of what ultimately became the Civil Rights Act of 1964. See 110 Cong. Rec. 14602 (1964). The Report is relevant here because S. 1937 contained language similar to that ultimately found in the Civil Rights Act. It guaranteed "equal employment opportunity," which was defined to "include all the compensation, terms, conditions, and privileges of employment." S. Rep. No. 867, 88th Cong., 2d Sess., 24 (1964).

404 U. S. 157, 178 (1971),[8] may not be afforded in a manner contrary to Title VII.

Several allegations in petitioner's complaint would support the conclusion that the opportunity to become a partner was part and parcel of an associate's status as an employee at respondent's firm, independent of any allegation that such an opportunity was included in associates' employment contracts. Petitioner alleges that respondent's associates could regularly expect to be considered for partnership at the end of their "apprenticeships," and it appears that lawyers outside the firm were not routinely so considered.[9] Thus, the benefit of partnership consideration was allegedly linked directly with an associate's status as an employee, and this linkage was far more than coincidental: petitioner alleges that respondent explicitly used the prospect of ultimate partnership to induce young lawyers to join the firm. Indeed, the importance of the partnership decision to a lawyer's status as an associate is underscored by the allegation that associates' employment is terminated if they are not elected to become partners. These allegations, if proved at trial, would suffice to show that partnership consideration was a term, condition, or privilege of an associate's employment at respondent's firm, and accordingly that partnership consideration must be without regard to sex.

---

[8] *Chemical & Alkali Workers* pertains to § 8(d) of the National Labor Relations Act (NLRA), which describes the obligation of employers and unions to meet and confer regarding "wages, hours, and other terms and conditions of employment." 61 Stat. 142, as amended, 29 U. S. C. § 158(d). The meaning of this analogous language sheds light on the Title VII provision at issue here. We have drawn analogies to the NLRA in other Title VII contexts, see *Franks* v. *Bowman Transportation Co.*, 424 U. S. 747, 768–770 (1976), and have noted that certain sections of Title VII were expressly patterned after the NLRA, see *Albemarle Paper Co.* v. *Moody*, 422 U. S. 405, 419 (1975).

[9] Respondent's own submissions indicate that most of respondent's partners in fact were selected from the ranks of associates who had spent their entire prepartnership legal careers (excluding judicial clerkships) with the firm. See App. 45.

## B

Respondent contends that advancement to partnership may never qualify as a term, condition, or privilege of employment for purposes of Title VII. First, respondent asserts that elevation to partnership entails a change in status from an "employee" to an "employer." However, even if respondent is correct that a partnership invitation is not itself an offer of employment, Title VII would nonetheless apply and preclude discrimination on the basis of sex. The benefit a plaintiff is denied need not *be* employment to fall within Title VII's protection; it need only be a term, condition, or privilege *of* employment. It is also of no consequence that employment as an associate necessarily ends when an associate becomes a partner. A benefit need not accrue before a person's employment is completed to be a term, condition, or privilege of that employment relationship. Pension benefits, for example, qualify as terms, conditions, or privileges of employment even though they are received only after employment terminates. *Arizona Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans* v. *Norris,* 463 U. S. 1073, 1079 (1983) (opinion of MARSHALL, J.). Accordingly, nothing in the change in status that advancement to partnership might entail means that partnership consideration falls outside the terms of the statute. See *Lucido* v. *Cravath, Swaine & Moore,* 425 F. Supp. 123, 128–129 (SDNY 1977).

Second, respondent argues that Title VII categorically exempts partnership decisions from scrutiny. However, respondent points to nothing in the statute or the legislative history that would support such a *per se* exemption.[10] When

---

[10] The only legislative history respondent offers to support its position is Senator Cotton's defense of an unsuccessful amendment to limit Title VII to businesses with 100 or more employees. In this connection the Senator stated:

"[W]hen a small businessman who employs 30 or 25 or 26 persons selects an employee, he comes very close to selecting a partner; and when a businessman selects a partner, he comes dangerously close to the situation he faces

Congress wanted to grant an employer complete immunity, it expressly did so.[11]

Third, respondent argues that application of Title VII in this case would infringe constitutional rights of expression or association. Although we have recognized that the activities of lawyers may make a "distinctive contribution . . . to the ideas and beliefs of our society," *NAACP* v. *Button*, 371 U. S. 415, 431 (1963), respondent has not shown how its ability to fulfill such a function would be inhibited by a requirement that it consider petitioner for partnership on her merits. Moreover, as we have held in another context, "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Norwood* v. *Harrison*, 413 U. S. 455, 470 (1973). There is no constitutional right, for example, to discriminate in the selection of who may attend a private school or join a labor union. *Runyon* v. *McCrary*, 427 U. S. 160 (1976); *Railway Mail Assn.* v. *Corsi*, 326 U. S. 88, 93–94 (1945).

## III

We conclude that petitioner's complaint states a claim cognizable under Title VII. Petitioner therefore is entitled to

---

when he selects a wife." 110 Cong. Rec. 13085 (1964); accord, 118 Cong. Rec. 1524, 2391 (1972).

Because Senator Cotton's amendment failed, it is unclear to what extent Congress shared his concerns about selecting partners. In any event, his views hardly conflict with our narrow holding today: that in appropriate circumstances partnership consideration may qualify as a term, condition, or privilege of a person's employment with an employer large enough to be covered by Title VII.

[11] For example, Congress expressly exempted Indian tribes and certain agencies of the District of Columbia, 42 U. S. C. § 2000e(b)(1), small businesses and bona fide private membership clubs, § 2000e(b)(2), and certain employees of religious organizations, § 2000e–1. Congress initially exempted certain employees of educational institutions, § 702, 78 Stat. 255, but later revoked that exemption, Equal Employment Opportunity Act of 1972, § 3, 86 Stat. 103.

her day in court to prove her allegations.   The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE POWELL, concurring.

I join the Court's opinion holding that petitioner's complaint alleges a violation of Title VII and that the motion to dismiss should not have been granted.   Petitioner's complaint avers that the law firm violated its promise that she would be considered for partnership on a "fair and equal basis" within the time span that associates generally are so considered.[1]   Petitioner is entitled to the opportunity to prove these averments.

I write to make clear my understanding that the Court's opinion should not be read as extending Title VII to the management of a law firm by its partners.   The reasoning of the Court's opinion does not require that the relationship among partners be characterized as an "employment" relationship to which Title VII would apply.   The relationship among law partners differs markedly from that between employer and employee—including that between the partnership and its associates.[2]   The judgmental and sensitive decisions that must be made among the partners embrace a wide range of subjects.[3]   The essence of the law partnership is the common

---

[1] Law firms normally require a period of associateship as a prerequisite to being eligible to "make" partner.   This need not be an inflexible period, as firms may vary from the norm and admit to partnership earlier than, or subsequent to, the customary period of service.   Also, as the complaint recognizes, many firms make annual evaluations of the performances of associates, and usually are free to terminate employment on the basis of these evaluations.

[2] Of course, an employer may not evade the strictures of Title VII simply by labeling its employees as "partners."   Law partnerships usually have many of the characteristics that I describe generally here.

[3] These decisions concern such matters as participation in profits and other types of compensation; work assignments; approval of commitments in bar association, civic, or political activities; questions of billing; accept-

conduct of a shared enterprise. The relationship among law partners contemplates that decisions important to the partnership normally will be made by common agreement, see, e. g., Memorandum of Agreement, King & Spalding, App. 153–164 (respondent's partnership agreement), or consent among the partners.

Respondent contends that for these reasons application of Title VII to the decision whether to admit petitioner to the firm implicates the constitutional right to association. But here it is alleged that respondent as an employer is obligated by contract to consider petitioner for partnership on equal terms without regard to sex. I agree that enforcement of this obligation, voluntarily assumed, would impair no right of association.[4]

---

ance of new clients; questions of conflicts of interest; retirement programs; and expansion policies. Such decisions may affect each partner of the firm. Divisions of partnership profits, unlike shareholders' rights to dividends, involve judgments as to each partner's contribution to the reputation and success of the firm. This is true whether the partner's participation in profits is measured in terms of points or percentages, combinations of salaries and points, salaries and bonuses, and possibly in other ways.

[4] The Court's opinion properly reminds us that "invidious private discrimination . . . has never been accorded affirmative constitutional protections." *Ante*, at 78. This is not to say, however, that enforcement of laws that ban discrimination will always be without cost to other values, including constitutional rights. Such laws may impede the exercise of personal judgment in choosing one's associates or colleagues. See generally Fallon, To Each According to His Ability, From None According to His Race: The Concept of Merit in the Law of Antidiscrimination, 60 Boston Univ. L. Rev. 815, 844–860 (1980). Impediments to the exercise of one's right to choose one's associates can violate the right of association protected by the First and Fourteenth Amendments. Cf. *NAACP* v. *Button*, 371 U. S. 415 (1963); *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449 (1958).

With respect to laws that prevent discrimination, much depends upon the standards by which the courts examine private decisions that are an exercise of the right of association. For example, the Courts of Appeals generally have acknowledged that respect for academic freedom requires some deference to the judgment of schools and universities as to the qualifications of professors, particularly those considered for tenured positions. *Lieberman* v. *Gant*, 630 F. 2d 60, 67–68 (CA2 1980); *Kunda* v. *Muhlenberg*

In admission decisions made by law firms, it is now widely recognized—as it should be—that in fact neither race nor sex is relevant. The qualities of mind, capacity to reason logically, ability to work under pressure, leadership, and the like are unrelated to race or sex. This is demonstrated by the success of women and minorities in law schools, in the practice of law, on the bench, and in positions of community, state, and national leadership. Law firms—and, of course, society—are the better for these changes.

---

*College,* 621 F. 2d 532, 547–548 (CA3 1980). Cf. *University of California Regents* v. *Bakke,* 438 U. S. 265, 311–315 (1978) (opinion of JUSTICE POWELL). The present case, before us on a motion to dismiss for lack of subject-matter jurisdiction, does not present such an issue.