**LaPORTE COUNTY REPUBLICAN CENTRAL COMMITTEE, Charles W. Morgan, and Bart Lombard, Plaintiffs,**

v.

**BOARD OF COMMISSIONERS OF the COUNTY OF LaPORTE and LaPorte County Election Board, Defendants.**

No. 3:94CV160AS.

United States District Court,
N.D. Indiana,
South Bend Division.

April 4, 1994.

Arthur L. Roule Jr., LaPorte, IN, and James Bopp Jr., Terre Haute, IN, for plaintiffs.

Shaw R. Friedman, Eric F. Yandt, LaPorte, IN, Carmen M. Piasecki, Eugenia S. Schwartz and Thomas H. Singer, South Bend, IN, for defendants.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

ALLEN SHARP, Chief Judge.

The court first notes that despite the sometimes frenetic time schedule of this case, the briefs were well and expertly written. Such has made much easier the necessary task of deciding this motion without benefit of oral argument.

On February 8, 1994 the plaintiffs filed this suit alleging that the defendants had violated the United States Constitution and the laws of the State of Indiana by gerrymandering[1] the three districts in LaPorte County. The Board of County Commissioners is currently composed of three Democrats. Indiana law permits the Board of Commissioners to periodically redraw the county commissioner residency districts, which this current board did in December of 1993.

It is contended that the Democrat county commissioners intentionally drew the district lines so as to prevent plaintiff Charles Mor-

gan, a Republican, from running for County Commissioner in District One. Mr. Morgan was a resident of District One until the 1993 redistricting placed him in District Three. Plaintiff Bart Lombard was apparently never a resident of District One, but wishes he were.

The plaintiffs ask this court to declare invalid the ordinance adopting the 1993 redistricting plan, thereby reverting to the prior district lines. They also request that the County Election Board be ordered to place Mr. Morgan on the primary ballot as a candidate for county commissioner from District One.

The defendants filed a Motion to Dismiss on March 18, 1994 which is now before the court. The motion has been extensively briefed, and the court is now prepared to rule.

## DISMISSAL FOR FAILURE TO STATE CLAIM

Dismissal of a complaint is appropriate only if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). *See also, Dresser Industries v. Pyrrhus AG,* 936 F.2d 921, 933 (7th Cir.1991).

A dismissal for failure to state a claim was not intended to be a trap for unartful pleaders. Rather, this court looks to the root of the case and determines whether any set of facts could support a cause of action. Dismissal serves the very valuable function of saving judicial and party resources in cases where it would simply not be productive to proceed.

In the case at bar, even if the plaintiffs were able to prove all of the allegations in their complaint (and this court does not

1. The term "gerrymander" has been used since 1812 to describe the process or result of redistricting an area by the party in power so as to gain unfair advantage at the polls. The word is derived from the name Elbridge Gerry (Governor of Massachusetts, 1810 to 1812) and the word "salamander," whose shape it was said one of the resulting political districts resembled (Gerry was also a non-signing member of the Constitutional Convention and died while serving as Vice President with James Madison).

doubt that they could), they would not state a cause of action for illegal redistricting. The plaintiffs simply do not have a case that can meet the difficult hurdles required to state a claim for illegal political gerrymandering.

## DISCUSSION

There is a primary election scheduled for May 7, 1994, which will determine the candidates for each party for the fall election. Plaintiff Charles Morgan, a Republican, states that until the redistricting he was a resident of District One, and intended to run for county commissioner in the upcoming primary. The redistricting placed Mr. Morgan in District Three, which will not hold an election for commissioner until 1996. He alleges that the Democrat-controlled Board of County Commissioners intentionally redrew the district lines so as to prevent him from running in the 1994 election for County Commissioner.

The Republican party contends that its members are being harmed because they are not being permitted to choose their candidates. Because of the redistricting, Mr. Morgan is being excluded from the pool of potential candidates for this year's election. The Republican party believes that preventing the Republican voters from being able to choose Mr. Morgan as their District One candidate for commissioner this year is unconstitutional and illegal.

Plaintiff Bart Lombard was apparently never a resident of District One. The Amended Complaint states that he wanted to be, he hoped to be, and if the redistricting would have placed him in District One he would have run as a Republican candidate for county commissioner. He alleges that the Board of County Commissioners intentionally did not change the district lines to include him in District One so as to prevent him from running in this election. He would apparently like this court to become the legislative body in LaPorte County and draw the lines to his benefit. Of course, if this suit was successful and the 1993 redistricting plan was declared invalid, Mr. Lombard would still not live in District One and would still not be able to run for election this year.

Apparently Mr. Lombard is not asking for any relief.

The defendants argue that this case is barred by laches, and that the Republican Party lacks standing. This court believes that the plaintiffs have the better arguments and would prevail on both issues. However, such is moot since this court is dismissing the complaint on other grounds.

### A. Justiciability

The defendants argue vehemently that this case is nonjusticiable. That is, it is not a proper subject for this court to examine. The Supreme Court clearly disagrees.

In *Davis v. Bandemer*, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), the Supreme Court explored the concept of political gerrymandering. *Racial* gerrymandering, the practice of denying a racial group fair representation by subverting the redistricting process, had been firmly dealt with by the Supreme Court since the 1960s. *See Bandemer*, 478 U.S. at 118, 106 S.Ct. at 2803. However, it was not so clear that political gerrymandering—diluting the power of a political group through redistricting—was anything more than a political question, in the province of the legislature rather than the courts. *Bandemer* answered the question.

The law regarding political gerrymandering is about as firm as marshmallow cream. One needs a road map to navigate the separate opinions, concurrences and dissents contained in *Bandemer*. However, there is one thing and one thing only which a majority of the justices (six of nine) agreed on: political gerrymandering claims are justiciable. *See id.* at 118–126, 106 S.Ct. at 2803–07 (J. White, joined by JJ. Brennan, Marshall, Blackmun, Powell, and Stevens).

The facts in *Bandemer* are different from those in the present case, but the principle remains the same. Nonjusticiability is to be narrowly applied, and equal protection challenges to a politically-drawn gerrymander do not involve the judicial branch in a matter more properly decided by one of the other two co-equal branches of government. *Id.* at 121, 106 S.Ct. at 2805. The majority stated that its only indications to the contrary had

been summary affirmances of lower court decisions, and it was not bound by them. *Id.* at 120, 106 S.Ct. at 2804.

The defendants argue that the present case is not the "type" of political gerrymandering claim that *Bandemer* found to be justiciable. However, *Bandemer* rejected an approach that would make this court evaluate a given type of political gerrymandering claim on an *ad hoc* basis (*see id.* at 126, 106 S.Ct. at 2807), preferring to look to the merits of each case. The majority in *Bandemer* quoted with approval the holding in *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), that legislative line drawing in the districting context is susceptible to adjudication under the applicable constitutional criteria. *Bandemer,* 478 U.S. at 121, 106 S.Ct. at 2805.

While this court must follow the Supreme Court's mandate and consider political gerrymandering claims to be justiciable, it does so with some reluctance. It is true that in egregious cases of political gerrymandering, the constitutional rights of a group of citizens to effectively participate in the political process are violated. In such cases it is this court's duty to uphold the Constitution and protect those rights from the overzealous (to be generous) political maneuverings of an entrenched group. However, in most cases, such as in this case, the propriety of actions which are not unconstitutional or otherwise illegal must be dealt with not by this court, but by the electorate, however their hearts and minds lead them.

## B. Dismissal of the Complaint

Although the *Bandemer* majority found that political gerrymandering claims are justiciable, the clear view of the Supreme Court is that plaintiffs in such cases are under a great burden to show a *prima facie* case. It must not be forgotten that the judgment in *Bandemer* was to overturn the three-judge District Court and find against the plaintiffs. The Court did so despite finding that political gerrymandering claims were justiciable, because the District Court had applied an insufficiently demanding legal standard. *Id.* at 113, 106 S.Ct. at 2800.

The plurality in *Bandemer* (JJ. White, Brennan, Marshall, and Blackmun) set forth a stringent threshold analysis for cases seeking to declare political redistricting invalid. Also, it must be noted that three justices (JJ. Burger, O'Connor, and Rehnquist) concurred in the reversal because they did not believe that such cases should be brought in federal courts *at all.* The winds of change have blown through the halls of the Supreme Court since *Bandemer,* and given the current make-up of the Court, it is impossible to believe that the threshold test required by the plurality would be in any way relaxed. If there has been any change, it has almost certainly been to make the threshold showing a more difficult task. This court will apply with confidence the stringent threshold requirements adopted by the plurality in *Bandemer.*

■ In a political gerrymandering case, it is not enough to prove (or in this case allege) that an intention to discriminate was present, or that districts were drawn in accordance with that intention. *See id.* at 139–40, 106 S.Ct. at 2814. The Republican voters must have been disadvantaged in fact. The terms "disadvantaged in fact" or "actual disadvantage" clearly mean "in terms of fair representation on a group level." *Id.* That is, political gerrymandering can be proven to violate the equal protection clause only when a political group (such as Republicans) have been shown to have been historically deprived of fair representation in the political process. If the Supreme Court is willing to entertain cases of political gerrymandering at all, it certainly requires that the plaintiffs be able to prove (or allege) a lack of fair representation of a group of voters in the political process as a whole. *See id.* at 141, 106 S.Ct. at 2815.

The plurality required a threshold showing analogous to that in racial gerrymandering cases. *Id.* at 139, 106 S.Ct. at 2814. The inquiry is two-fold: there must be both a history (actual or projected) of disproportionate election results and "strong indicia of lack of political power and the denial of fair representation." *Id.; see also Badham v. March Fong Eu,* 694 F.Supp. 664, 670 (N.D.Cal.1988) (three-judge court), *aff'd*

*mem.* 488 U.S. 1024, 109 S.Ct. 829, 102 L.Ed.2d 962 (1989). It was there that the plurality diverged from Justice Powell's view, which only Justice Stevens joined. The plurality's view is the better one.

Justices Powell and Stevens would weigh numerous factors to determine whether political plaintiffs have stated a cause of action. *Id.* 478 U.S. at 164, 106 S.Ct. at 2827. The plurality felt that Justice Powell's approach might permit a case when only "possibly transitory results" were alleged. *Id.* at 140, 106 S.Ct. at 2814. That is exactly the case here. The plurality rejected such a situation, requiring more than the possibly transitory results of one or two elections. *Id.*

■ The plurality's opinion leads this court to the decision that in this case it does not matter how geographically ridiculous, patently political, or state-law violative is the redistricting plan. Those factors are relevant only to the question of "intent." If this case turned on whether the Democrat-controlled Board of County Commissioners *intended* to discriminate against the Republicans, the plaintiffs would likely win. However, those factors are legally irrelevant in light of this court's determination that no relevant discriminatory *effects* have been alleged or could be shown as a matter of law. *Id.* at 141 n. 20, 106 S.Ct. at 2815 n. 20.

This is really a case of a single frustrated potential candidate who is suing because the machinations of the Democrat-controlled Board of County Commissioners prevented him from running as a candidate in District One. However, there is no federally protected right to run for an office in a particular district, and the plaintiffs have not alleged the kind of history of disproportionate results that would be required to sustain a constitutional challenge to the 1993 redistricting plan. An allegation of possibly transitory results is not enough, and that is all there is in this case.

The plaintiffs claim that they have alleged enough to meet the "discriminatory effects" test as interpreted by *Terrazas v. Slagle*, 821 F.Supp. 1162, 1174 (W.D.Tex.1993) that a "wronged partisan group cannot over the long haul counteract this tactic through its influence in another relevant political structure or structures." This court strongly disagrees. The plaintiffs have alleged only that the 1993 plan prevents a specific potential candidate from running in a specific district. That does not, regardless how skillfully the plaintiffs have presented the case law, meet the threshold requirement. It *may* be true that Morgan, if chosen in the primary, would be more likely to beat the Democrat in the fall election than the other Republican candidate currently on the ballot for District One, although it takes at least a couple of hypothetical jumps to get there. However, there *is* a Republican running in the primary and he may beat the Democrat candidate in the election. There has been no *allegation*, let alone proof, that the political make-up of the districts has been gerrymandered so as to dilute the Republican voting strength and prevent a Republican from winning. All there is in this case is an allegation that Morgan has been personally kept off the ticket, and an underlying allegation that Morgan would be more likely to win the upcoming election than the other Republican candidate currently on the ticket. That falls far short of stating the kind of "historical effect" required in political gerrymandering cases. No matter how well argued, this sow's ear is not going to turn into a silk purse.

■ There is a strong presumption against granting Rule 12(b)(6) motions to dismiss. The record must be clear that no possible hope exists for any success on the merits. In the same vein, where there is no possible hope for success it is most unwise and unfair to hold out such hope. With all deference here there is no such hope and it is the better part of judicial valor to make that decision neatly and promptly. The record here compels such a decision and permits no other.

## CONCLUSION

The objection to gerrymandering is that those in power are corrupting the free political process through anti-democratic (that is democratic with a small "d") practices. However, unless gerrymandering can be shown to rise to a level that is repugnant to

the Constitution (a high standard which this case does not meet), it is up to an offended and affronted electorate to make things right.

The claims made here on the basis of this court's federal question jurisdiction are now **DISMISSED WITH PREJUDICE.** Any claims alleged here on the basis of state law are **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**