**UNITED STATES of America, Plaintiff,**

v.

**ELLERBE BECKET, INC., Defendant.**

**Civil No. 4–96–995.**

United States District Court, D. Minnesota, Fourth Division.

Sept. 30, 1997.

---

Robert Michael Small, U.S. Atty. Office, Minneapolis, MN, Kate M. Nicholson, Winstead, Sechrest & Minick, PC, Dallas, TX, Joan A. Magagna, Washington, DC, John L. Wodatch, Washington, DC, Deval L. Patrick, Day, Berry & Howard, Boston, MA, Thomas A. Contois, United States Department of Justice, Civil Rights Division, Washington, DC, for U.S.

Philip Lane Bruner, Faegre & Benson, Minneapolis, MN, Vincent William King, King Law Office, Minneapolis, MN, Lewis J. Baker, Thomas J. Powell, Watt, Tieder & Hoffar, McLean, VA, for Ellerbe Becket, Inc.

Mary Cullen Yeager, Faegre & Benson, Minneapolis, MN, Richard C. Wall, Geoffrey T. Keating, McKenna & Cuneo, Washington, DC, for American Institute of Architects, amicus.

Richard C. Wall, Geoffrey T. Keating, McKenna & Cuneo, Washington, DC, for Associated Gen. Contractors of America, Inc., amicus.

Lawrence A. Moloney, Doherty, Rumble & Butler, Minneapolis, MN, Maura S. Murphy, Doherty, Rumble & Butler, Minneapolis, MN, for amicus curiae Building Owners and Managers Association.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

TUNHEIM, District Judge.

The United States filed this action against Ellerbe Becket, Inc., an architectural firm, for violations of the Americans with Disabilities Act (ADA). The Complaint alleges that Ellerbe has engaged in a pattern or practice of designing new sports arenas and stadiums across the United States that fail to comply with Title III of the ADA, 42 U.S.C. § 12181–12189, and its implementing regulation regarding lines of sight for disabled patrons.

The United States alleges that Ellerbe has repeatedly designed arenas and stadiums with wheelchair seating locations that do not provide wheelchair users with lines of sight to the floor or field that are comparable to those of other spectators. The United States seeks civil penalties and an injunction compelling Ellerbe to comply with the requirements of the ADA in designing arenas and stadiums in the future.

This matter is before the Court on Ellerbe's motion to dismiss. Ellerbe argues that architects are excluded from liability under Title III of the ADA as a matter of law. Ellerbe also objects to this Court's consideration of the United States' claims on a variety of other grounds, including standing, comity, the "first-filed" rule, and

an allegation that the government is forum-shopping. The Court first considers these alleged bars to its consideration of the merits of this action, and then turns to the substantive motion to dismiss.

## I. NON–MERITS DEFENSES

### A. Standing

■ Ellerbe argues that the United States lacks standing because neither injunctive relief nor civil penalties are appropriate in this case and there is therefore no likelihood that the claimed injury will be redressed by a favorable decision for plaintiff on the merits. Ellerbe argues that a civil penalty would be inappropriate in this case because there is no evidence that Ellerbe willfully, intentionally or recklessly disregarded the law. The United States disputes this claim, citing deposition testimony it claims demonstrates Ellerbe's willful or intentional disregard for the law. The existence and significance of Ellerbe's "good faith," which the Court must consider in determining whether to assess a civil penalty, is not a matter appropriate for resolution on a motion to dismiss. Ellerbe argues that injunctive relief is not appropriate in this case as it would not serve a remedial purpose, apparently claiming that injunctive relief would be remedial only if it bound all design professionals. Ellerbe provides no support for this assertion. The Court will face this issue only in the event it finds that architects are subject to liability under the ADA and the United States proves that Ellerbe has engaged in a pattern or practice of designing noncompliant facilities. It would be premature at this juncture to determine whether injunctive relief would serve a hypothetical remedial purpose.[1] The Court finds Ellerbe's standing arguments unpersuasive.

### B. Other defenses

Ellerbe also urges this Court to decline to decide the issues presented on a variety of other theories, including comity, the "first-

---

1. Ellerbe's remaining standing argument is that neither the statute nor its implementing regulations include the requirement that wheelchair seating areas have lines of sight over standing spectators. This argument merely restates one of Ellerbe's substantive arguments in support of dismissal of the United States' claims. The Court will consider this argument in its analysis of the merits of Ellerbe's motion to dismiss.

filed" rule, ripeness, and forum-shopping. All of these arguments are based on the same underlying objection to the United States' case. The United States has brought a pattern or practice discrimination claim against Ellerbe. *See Int'l Brhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In its Complaint, the government lists five arenas as exemplars of Ellerbe's alleged discriminatory pattern. The United States claims that these five arenas are simply illustrative of Ellerbe's conduct, rather than an exclusive list of the arenas at issue.

Ellerbe's objections are based on the fact that similar lawsuits have been filed in other jurisdictions involving the same arenas and stadiums. The United States was involved in one such case in an *amicus* capacity, litigation regarding the M.C.I. Center arena in Washington D.C. The District Court for the District of Columbia dismissed Ellerbe from that lawsuit on the grounds that architects are not subject to liability under the ADA. *See Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Engineers*, 945 F.Supp. 1 (D.D.C.1996), *aff'd on other grounds*, 117 F.3d 579 (D.C.Cir.1997). Ellerbe accuses the government of forum-shopping for filing this pattern or practice suit against Ellerbe after Ellerbe was dismissed from the D.C. lawsuit.

■ The United States claims it cannot be forum-shopping because this lawsuit is the only action it has filed anywhere in the United States. The government appeared in the D.C. action only in an *amicus* capacity and could not appeal the adverse judgment. Furthermore, the Court agrees that actions brought by private parties cannot bind the government, that the United States has an independent interest in the enforcement of federal law, and that only the United States is empowered to bring pattern or practice claims and to secure civil penalties. The United States also contends that it informed Ellerbe of its intent to sue in this jurisdiction before the D.C. action was filed by private plaintiffs. The Court finds no basis for concluding that the United States is "forum-shopping," or any legal basis for dismissing the case simply because the United States

has filed a lawsuit seeking a different result from that obtained by a private party in another jurisdiction.

More troubling to the Court, however, are problems inherent in the existence of pending lawsuits brought by private parties in other jurisdictions alleging non-compliance with the ADA's line of sight requirements with respect to four of the five arenas listed in the United States' Complaint.[2] The Court is concerned about the potential for inconsistent decisions on the legal issues involved in the private actions which parallel the issues before this Court. While it is true that the United States seeks only prospective relief and civil penalties in this case, this Court will be required, assuming defendant's instant motion fails, to decide the same questions presented to other jurisdictions regarding whether the arenas were designed in violation of the line of sight requirement. Defendant, however, has not demonstrated that this potential for overlapping legal issues is a bar to this Court's consideration of the action before it. Rather, the Court anticipates that collateral estoppel issues may arise as this litigation progresses.

## II. DEFENSES ON THE MERITS

### A. Legal Standard

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the Court presumes all facts alleged in the complaint to be true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–2233, 81 L.Ed.2d 59 (1984). The complaint must be viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in plaintiff's favor. *Id.* The court will dismiss a complaint, however, when it appears the plaintiff cannot prove any set of facts in support of its claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

---

2. These arenas are: the Rose Garden Arena in Portland, Oregon; the CoreStates Arena in Philadelphia, Pennsylvania; the Fleet Center in Bos-ton, Massachusetts, and, as noted above, the MCI Center in Washington, D.C.

### B. Facts

Ellerbe is an architectural and engineering firm headquartered in Minnesota, with offices around the United States. The United States contends that Ellerbe Becket has designed and constructed a series of arenas and stadiums that do not comply with the ADA. Specifically, the government alleges that the facilities have wheelchair seating locations that do not provide wheelchair users with lines of sight to the floor or field comparable to those enjoyed by non-disabled spectators. The lines of sight from the wheelchair seating areas are not comparable to those of non-disabled spectators because they do not allow patrons in wheelchairs to see the facility's floor when other patrons stand.

Ellerbe designed each of the five facilities named in the Complaint for a different owner. Ellerbe is not the owner, operator, lessor or lessee of any of the arenas listed in the United States' Complaint.

### C. Analysis

Ellerbe moves to dismiss the government's Complaint on the grounds that architects are not subject to liability under the ADA. Ellerbe argues that: (1) the plain language of the ADA excludes architects as potentially liable entities; (2) only entities which design *and* construct facilities may be liable under § 303(a) of the ADA, and architects by definition only design buildings; (3) the Department of Justice's interpretation of § 303(a) of the ADA is not entitled to deference because the plain language of the statute is not ambiguous; and (4) the Department of Justice's interpretation of the regulation requiring comparable lines of sight for wheelchair seating areas is not entitled to deference.

The United States' disputes Ellerbe's interpretation of the relevant provisions of the ADA. According to the United States, inclusion of the word "design" in the ADA indicates Congress' intention to subject those who design buildings to liability. The government argues that Ellerbe's interpretation is inconsistent with the remedial purpose of the ADA and that it would leave an inexplicable gap in coverage of the statute. The United States also urges the Court to give deference to the Department of Justice's interpretation of both § 303(a) of the ADA and

the comparable the lines of sight requirement in the implementing regulations.

For the reasons stated below, the Court finds the government's interpretation of the statute more persuasive, and therefore denies the motion to dismiss the Complaint. The Court also finds, in accordance with the D.C. Circuit's opinion in *Paralyzed Veterans of Am. v. D.C. Arena, L.P.*, 117 F.3d 579 (D.C.Cir.1997), that the Department of Justice's interpretation of the regulation is reasonable and entitled to deference.

### 1. The Americans with Disabilities Act, 42 U.S.C. § § 12101 *et seq.*

The purpose of the ADA is to provide "a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the ADA bars discrimination in places of public accommodation against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(a). New construction subject to the ADA must be "readily accessible to and usable by" the disabled. 42 U.S.C. § 12183(a). Architectural standards for design and construction of new buildings are to be set by the Attorney General. 42 U.S.C. § 12183(a), 12186(b).

The Attorney General carries out this mandate through a regulation known as the "Standards for Accessible Design." *See* 28 C.F.R. Part 36, App. A. These standards set out requirements for wheelchair seating for newly constructed arenas and stadiums as follows:

> [w]heelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and *lines of sight comparable to those for members of the general public.*

28 C.F.R. Part 36, App. A, § 4.33.3. The requirements in the Standards for Accessible Design are further detailed through the Department of Justice's publication of an "Americans with Disabilities Act Title III Technical Assistance Manual." The Technical Assistance Manual was not adopted through an administrative rulemaking pro-

cess. In late 1994, the Department of Justice issued a supplement to the Technical Assistance Manual which interpreted "lines of sight comparable" to require that wheelchair seating areas have "lines of sight over spectators who stand."

### 2. Liability of architects

The United States argues that architects are subject to liability under § 303(a) of the ADA, which provides:

as applied to public accommodations and commercial facilities, discrimination *for purposes of section 302(a) of this title* includes

(1) a failure to *design and construct* facilities for first occupancy later than [January 26, 1993] that are readily accessible to and usable by individuals with disabilities ...

42 U.S.C. § 12183(a) (emphasis added). This provision applies to both "public accommodations" and "commercial facilities." Section 303(a) does not specify the type of entities liable for violations.

The reference to section 302(a) is to the following language:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The remainder of section 302(a) lists general and specific examples of prohibited discrimination, such as denying participation, affording unequal or separate benefits, and applying eligibility criteria which screen out the disabled. 42 U.S.C. § 12182(b).

■ Ellerbe argues that it is not subject to liability under § 303(a) because the reference to § 302(a) contained in it not only makes clear that failure to design and construct a compliant facility is discrimination, but also clarifies the parties who may be liable, limiting them to "any person who owns, leases (or leases to), or operates" a noncompliant facility. Ellerbe contends that the statute is unambiguous in this respect.

The United States points out that under Ellerbe's argument, the reference to § 302(a) would limit the parties liable under § 303(a) to owners, operators, lessors, or lessees of public accommodations, which would render the inclusion of commercial facilities in § 303(a) meaningless. The practical application of such an interpretation, the United States argues, would be to subject to § 303(a) liability only owners or operators of public accommodations (or commercial facilities which also meet the definition of public accommodations), and would leave no entity liable for violations of the new construction accessibility standards for buildings which are commercial facilities only.[3]

■ The Court finds the United States' interpretation more persuasive. Congress clearly intended that commercial facilities be subject to the accessibility standards for new construction. See H.R. Rep. 485, Part 2, 101st Cong., 2d Sess. 116 (1990) ("the use of the term 'commercial facilities' is designed to cover those structures that are not included within the specific definition of 'public accommodation.' "). Statutory language should be construed in a manner that gives effect to all terms so as to avoid rendering terms useless. *See Moskal v. United States,* 498 U.S. 103, 109–110, 111 S.Ct. 461, 465–466, 112 L.Ed.2d 449 (1990). Ellerbe has not explained adequately how its interpretation would not result in an inexplicable gap in coverage of a class of buildings Congress clearly intended to be covered by the accessibility standards for new construction. Ellerbe responds by arguing that the list of entities liable should be imported into § 303(a) from § 302(a), but the phrase "of public accommodations" should be expanded to include "or commercial facilities." This argument undercuts Ellerbe's "plain language" logic.[4]

---

3. The ADA defines commercial facilities to include all facilities intended for non-residential use whose operations affect commerce. *See* 42 U.S.C. § 12181(2). Public accommodations are defined as entities whose operations affect commerce and fit within one or more of twelve specific categories of public accommodations.

*See* 42 U.S.C. § 12181(7). Commercial facilities is therefore the broader of the two categories.

4. The Court would reach the same conclusion if it found that the silence of § 303(a) with respect to the parties responsible for violations, along with the reference to § 302(a) in § 303(a), consti-

One of two federal courts to have examined this issue was also persuaded that architects are subject to liability under the new construction provision of the ADA, § 303(a). *See Johanson v. Huizenga Holdings, Inc.,* 963 F.Supp. 1175 (S.D.Fla.1997). The court denied a motion to dismiss arguing that the entities covered by § 303(a) were only those covered by § 302(a). The Court stated:

> Plaintiffs and the United States in its Amicus Curiae brief assert that limiting § 303 to the parties covered by § 302 would effectively eliminate § 303's coverage of commercial facilities, despite the language in § 303 which explicitly names "commercial facilities" in connection with the new construction mandate. If architects are not liable under the ADA, then it is conceivable that no entity would be liable for construction of a new commercial facility which violates the ADA.

*Id.* at 1178.

The D.C. court reached the opposite conclusion in *Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Engineers,* 945 F.Supp. at 2. In that case, the court observed that architects generally provide their design services by contract to other parties involved in the project. *Id.* The court concluded that the conjunctive use of "design and construct" in § 303(a) refers only to parties responsible for both functions, and thus architects are excluded from liability because they are not responsible for design and construction. *Id.* The court also found that the language of § 303(a) was unambiguous, and deference to the Department of Justice's interpretation was therefore inappropriate. *Id.* Despite its finding that the named entities in § 302(a) were imported into § 303(a) by reference, however, the D.C. court listed general contractors as potentially liable entities. *Id.* at 3. This dictum is inconsistent with the court's conclusion that only the entities listed in § 302(a) may be liable for violations of § 303(a). The court's decision was not appealed.

The D.C. court's analysis leads the Court to consideration of Ellerbe's argument that the conjunctive phrase "design and con-

struct" precludes liability for architects. This Court cannot conclude as a matter of law, as the defendant requests and the D.C. court apparently concluded, that architects never both design and construct buildings. *See Paralyzed Veterans of Am.,* 945 F.Supp. at 2. The United States contends that there is a fact issue regarding whether Ellerbe participated in the construction as well as the design of the arenas at issue, and cites to documents the United States claims support this contention. It is not necessary to convert this motion into a summary judgment motion to resolve this issue. The United States' Complaint clearly alleges that Ellerbe provided design, architectural and engineering services and participated in and monitored construction of some or all of the named facilities. Given that the United States alleged that Ellerbe participated in design and construction of the facilities at issue, this Court need not decide at this juncture whether a party may be liable under § 303(a) for designing a noncompliant facility if it had no involvement in constructing the facility.

Ellerbe raises interesting public policy arguments in favor of excluding architects from potential liability under the ADA. None of these arguments, however, tie into any evidence of the legislative history of the statute or the intent of Congress. It is not a proper role for this Court to determine whether liability for architects is desirable from a public policy perspective; rather, this Court must interpret the statute in accordance with its plain meaning and the intent of Congress. The Court concludes that architects are not excluded from liability under the ADA as a matter of law.

### 3. The line of sight requirement.

 Since Ellerbe filed this motion to dismiss, and after the parties submitted their memoranda to the Court, the D.C. Circuit issued an opinion on the validity of the Department of Justice's interpretation of the line of sight requirement in the Standards

tuted an ambiguity in the statute. If the Court could not determine Congress' intent from the plain language of the statute, the Court would defer to the Department of Justice's interpreta-

tion of the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

for Accessible Design and the Technical Assistance Manual. The court thoroughly reviewed the history of the Department's interpretation of the comparable lines of sight requirement and found it entitled to deference. *Paralyzed Veterans of America v. D.C. Arena, L.P.*, 117 F.3d 579, 588 (D.C.Cir. 1997) *("PVA II")*. The court held that the supplement to the Technical Assistance Manual containing the requirement that wheelchair seating areas have lines of sight over standing spectators was not a substantive rule requiring notice-and-comment under the Administrative Procedure Act ("APA"), but was an interpretive rule not subject to the APA. *Id.; but see Caruso v. Blockbuster–Sony Music Entertainment Centre*, 968 F.Supp. 210 (D.N.J.1997). The Court also affirmed the district court's holding that "substantial compliance" with this standard, 75–88% of the wheelchair seating, was sufficient to avoid liability under the ADA. *Id.* at 589. This Court finds the opinion of the D.C. Circuit to be persuasive and dispositive of the issues raised in this motion to dismiss regarding the lines of sight requirement. Accordingly, the motion will be denied.

### ORDER

Based upon all of the files, records and proceedings herein, the Court **DENIES** defendants' motion to dismiss the Complaint [Docket No. 19].