**Brianna Paige VINCENT and Heather Vincent, Plaintiffs,**

v.

**ESSENT HEALTHCARE OF CONNECTICUT, INC., Sharon Hospital, Inc., Essent Healthcare Inc., Howard Mortman, M.D., and Sharon OB/GYN Associates, Defendants.**

**No. CIV. 3:04CV491JBA.**

United States District Court, D. Connecticut.

May 12, 2005.

Joel Thomas Faxon, Michael A. Stratton, New Haven, CT, for Plaintiffs.

Katharine C. Callahan, Matthew Freimuth, Hartford, CT, Madonna A. Sacco, Bridgeport, CT, for Defendants.

### *RULING ON HOSPITAL DEFENDANTS' PARTIAL MOTION TO DISMISS [DOC. # 42]*

ARTERTON, District Judge.

Infant plaintiff Brianna Paige Vincent and her mother, Heather Vincent, filed this diversity action against Sharon Hospital and its partner corporations, Essent Healthcare of Connecticut and Essent Healthcare, Inc., (collectively "hospital defendants") as well as Dr. Howard Mortman and his practice, alleging medical malpractice (Counts One and Three), violations of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen.Stat. § 42–110b, *et seq.,* (Count Two), and negligent infliction of emotional distress (Count Four). *See* Amended Complaint [Doc. # 38]. Before the Court is the hospital defendants' motion to dismiss [Doc. # 42] the CUTPA count. For the reasons that follow, the motion will be granted and Count Two will be dismissed.

### I. Factual Background

The amended complaint alleges the following facts, which are presumed to be true for purposes of deciding this motion to dismiss. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991).

The hospital defendants are joint venturers who operate Sharon Hospital, a for-profit health care organization. Sharon Hospital is incorporated in the state of Connecticut, and Essent Healthcare, Inc., is a foreign corporation. The hospital, together with individual defendant Dr. Mortman and his private practice, Sharon Ob/Gyn Associates, undertook to care for the plaintiff Heather Vincent and her daughter, then *in utero.* The infant plaintiff, Brianna Vincent, was born on March 15, 2003 at Sharon Hospital. The Vincents are citizens of the State of New York.

The Vincents allege that due to the "carelessness and negligence of the defendants" in the course of Heather Vincent's pregnancy, labor and delivery, Brianna Vincent developed severe and permanent

health problems, including cerebral palsy. Am. Compl. ¶ 7.

The original complaint filed in this case on March 24, 2004 alleged only three counts: medical malpractice as to the hospital defendants; medical malpractice as to the individual defendant; and negligent infliction of emotional distress as to all defendants. *See* Complaint [Doc. # 1]. On September 20, 2004, plaintiffs amended their complaint to add a claim for CUTPA violations against the hospital defendants.

The CUTPA count alleges that the hospital defendants engaged in unfair or deceptive trade practices within the meaning of the statute, which "includes, but is not limited to":[1]

a) The ESSENT DEFENDANTS, in advertising and promotional materials, failed to disclose to the general public and the plaintiffs in particular that due to profitability and other entrepreneurial reasons they would have insufficient staff available and prepared to perform emergency cesarean sections and other essential obstetrical treatment;

b) The ESSENT DEFENDANTS, through advertising and promotional materials, misrepresented the quality and capacity of their SHARON HOSPITAL facility to perform obstetrical procedures.

Am. Compl. ¶ 14.

The hospital defendants now move to dismiss the CUTPA count pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must set forth " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), quoting Fed.R.Civ.P. 8(a)(2), *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99 (footnote omitted), *see also Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. Discussion

The Connecticut Supreme Court has held that "although physicians and other health care providers are subject to CUTPA, they may be liable only for 'unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of the practice of medicine.' " *Janusauskas v. Fichman*, 264 Conn. 796, 826 A.2d 1066, 1075 (2003) (quoting *Haynes v. Yale–New Haven Hospital*, 243 Conn. 17, 699 A.2d 964 (1997)).

> [T]he touchstone for a legally sufficient CUTPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services is implicated, aside from

---

1. This formulation is unavailing to expand the scope of alleged CUTPA violations, as only "[o]ne or more of the unfair or deceptive acts described above" is alleged to have been a substantial causal factor in plaintiffs' injuries. Am. Compl. ¶ 22.

medical competence or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation.

*Haynes,* 699 A.2d at 974. For example, the methods by which a health care provider solicits business, bills patients, or divides assets among shareholders may subject it to CUTPA liability. *See Janusauskas,* 826 A.2d at 1075; *Fink v. Golenbock,* 238 Conn. 183, 680 A.2d 1243 (1996).

The Connecticut Supreme Court has made clear, however, that plaintiffs are not permitted to "transform every claim for medical malpractice into a CUTPA claim." *Haynes,* 699 A.2d at 974. The plaintiff in *Haynes* sued Yale–New Haven Hospital on behalf of her mother, who had been in a serious motor vehicle accident and died while undergoing emergency surgery at the hospital. *Id.* at 966. The plaintiff "alleged that Yale–New Haven had engaged in unfair and deceptive trade practices because, although the hospital was certified as a major trauma center, it had failed to meet the requisite standards of care for such a center," due to inadequate staffing, training, and support in the emergency department. *Id.* The court affirmed the trial judge's grant of summary judgment to the hospital, holding that Yale–New Haven's "representation is simply what all physicians and health care providers represent to the public—that they are licensed and impliedly that they will meet the applicable standards of care." *Id.* at 974–75. Further, the court held that allegations concerning "medical competence," including "the adequacy of staffing, training, equipment or support personnel," fall within the purview of professional malpractice, not CUTPA. *Id.* at 974.

Similarly, the Connecticut Supreme Court in *Janusauskas* affirmed a trial judge's entry of a directed verdict on be-half of an ophthalmologist sued under CUTPA by a patient who had suffered a negative outcome after eye surgery. *Janusauskas,* 826 A.2d at 1069. The plaintiff alleged that the defendant engaged in deceptive advertising by giving him a brochure describing the doctor as "one of the country's leading doctors in his field." *Id.* at 1076. The court disagreed, holding that "this statement simply represents to the public that the defendant will meet the standard of care applicable to a 'leading doctor.' If the defendant fails to meet this standard of care and harm results, the remedy would be based upon malpractice, and not upon CUTPA." *Id.* The court further wrote that the plaintiff's allegation that the doctor's medical decisions were motivated by profit was not an "entrepreneurial aspect" of practicing medicine, because many professional decisions are connected to entrepreneurial ones, and the distinction between the two "would dissolve" if the plaintiff's allegations were held sufficient to state a CUTPA claim. *Id.* at 1077 n. 13.

■ In the present case, plaintiffs allege two CUTPA violations. First, they allege that "due to profitability and other entrepreneurial reasons," defendants failed to disclose to the public that "they would have insufficient staff available and prepared to perform emergency cesarean sections and other essential obstetrical treatment." The allegation of a profit motive for making certain medical decisions does not, in itself, turn a medical decision into an entrepreneurial one. *Janusauskas,* 826 A.2d at 1077 n. 13; *see also Estate of Doe v. Pegasus Mgmt. Co.,* No. CV030082729, 2004 WL 944767 (Conn.Super. April 14, 2004) (granting motion to strike as insufficient an allegation that nursing home management company violated CUTPA because it was motivated by profit to admit new residents to the detriment of the safe-

ty of current residents). Furthermore, the Connecticut Supreme Court held squarely in *Haynes* that a claim based on "the adequacy of staffing" is a claim concerning "medical competence," not trade practices, and thus cannot state a CUTPA claim. *Haynes*, 699 A.2d at 974. Just as the plaintiff in *Haynes* did not state a claim based on insufficient staffing or training in the emergency department of Yale–New Haven Hospital, the plaintiffs in this case fail to sufficiently allege a CUTPA claim based on inadequate staffing for emergency cesarean sections at Sharon Hospital.

■ Plaintiffs' second CUTPA allegation is that the hospital defendants, "through advertising and promotional materials, misrepresented the quality and capacity of their SHARON HOSPITAL facility to perform obstetrical procedures." Plaintiffs specified in their opposition brief that the allegation is directed to "defendants' advertising and promotion of the quality of their facilities ... [and] their abilities to provide timely medical care." Pl. Mem. in Opp. [Doc. # 44] at 6.

■ *Janusauskas* held that the "solicitation of business" is a non-medical aspect of a health care provider's practice and as such may be regulated under CUTPA. 826 A.2d at 1075, 1077 ("advertising, independent of treatment, clearly can be an entrepreneurial aspect of the practice of medicine."). However, to state a violation under CUTPA, the advertising must be alleged to be "unfair, unconscionable or deceptive." A representation concerning the quality of care available at a facility does not meet this standard because it is "simply what all physicians and health care providers represent to the public—that they are licensed and impliedly that they will meet the applicable standards of care. If they fail to meet the standard of care and harm results, the remedy is not one based upon CUTPA, but upon malpractice." *Haynes*, 699 A.2d at 974–75.

Plaintiffs' allegation that Sharon Hospital misrepresented its ability to provide timely emergency cesarean sections is nearly identical to Haynes' allegation that the hospital held itself out as a trauma center but failed to meet the standard of care expected of such an institution. Both claims are properly conceived as medical negligence claims, not CUTPA claims.

The Connecticut Supreme Court has held that it is impermissible for a plaintiff to simply recast malpractice allegations as CUTPA violations. *Haynes*, 699 A.2d at 974 ("Medical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation"), and plaintiffs' description in their opposition brief that "[t]his is an obstetrical malpractice case," Mem. in Opp. [Doc. # 44] at 1, is telling as to what this case "chiefly" concerns. *Janusauskas*, 826 A.2d at 1075. Neither the allegation that the hospital defendants misrepresented their staffing levels, nor the allegation that they misrepresented the quality of their emergency obstetrical care, is sufficient to state a viable claim under CUTPA.

## IV. Conclusion

Accordingly, defendants' motion to dismiss Count Two of the Amended Complaint is GRANTED.

IT IS SO ORDERED.