**HELMARK STEEL, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION, and Clement H. Monge, Regional Director of USDOT Departmental Office of Civil Rights, Defendants.**

No. Civ.A.98–353–RRM.

United States District Court,
D. Delaware.

Oct. 19, 1999.

David Staats, Law Office of David Staats, P.A., Wilmington, Delaware, for plaintiff.

Paulette K. Nash, United States Attorney's Office, Wilmington, Delaware, for defendants.

## OPINION

McKELVIE, District Judge.

This is an administrative law case. Plaintiff Helmark Steel, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. Defendants are the United States Department of Transportation ("DOT") and Clement H. Monge, the Regional Director of the DOT's Departmental Office of Civil Rights.

This action concerns DOT's determination that Helmark is not eligible to participate as a Disadvantaged Business Enterprise ("DBE") on federally-assisted DOT projects. On June 19, 1998, Helmark filed a complaint alleging that DOT's determination was unconstitutional, arbitrary and capricious, an abuse of discretion, or otherwise unlawful in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"). Helmark seeks judicial review of DOT's determination and a declaratory judgment that Helmark is eligible to participate as a DBE on federally-assisted transportation projects.

On September 11, 1998, defendants moved to dismiss the case for failure to state a claim, or, in the alternative, for summary judgment. Defendants contend that the statute and regulations establishing the DBE program exclude from participation businesses, such as Helmark, with annual gross receipts in excess of $16.6 million. Helmark also moved for summary judgment, arguing that it is not excluded from participation because the statute and regulations do not define "gross receipts" and application of DOT's definition of the

term is arbitrary and capricious and otherwise unlawful. This is the court's decision on the motions.

## I. *FACTUAL BACKGROUND*

The court draws the following facts from the administrative record.

Helmark manufactures structural steel for use in erecting buildings, bridges, airplane hangers and other structures. William and Helen O'Brien incorporated Helmark in 1969 and Helen O'Brien serves as the company's Chief Executive Officer, Secretary and Treasurer. In addition, Helen O'Brien owns 54.12% of the company's stock. Helmark contends that it is entitled to DBE certification in part because a woman controls the company.

Congress requires that a certain percentage of federal transportation funds are expended on DBEs. DBEs are businesses owned and controlled by individuals that Congress has designated socially and economically disadvantaged, including women and racial minorities. The State of Delaware's Department of Transportation ("DelDOT"), as required in order to receive DOT funds for construction projects, implemented a DBE program. As part of this program, DelDOT determines the eligibility of applicants seeking DBE certification.

DelDOT approved Helmark's first application for DBE certification in 1986. Then in 1987, DelDOT announced that Helmark had graduated from the DBE program because the company's average annual gross receipts over the preceding three years exceeded $16.6 million, the maximum amount allowed for DBEs. Helmark reapplied for DBE certification in 1996. In its application for re-certification, Helmark reported average annual gross receipts between 1993 and 1995 of $34,166,000.

On September 5, 1996, DelDOT denied Helmark's application for DBE certification because the company's average annual gross receipts over the preceding three years exceeded the maximum amount allowed for DBEs. On March 19, 1997, DelDOT denied Helmark's appeal of its initial decision. Helmark appealed to DOT. On behalf of DOT, Monge denied the appeal by letter dated May 20, 1998. In the letter, Monge stated that he denied Helmark's appeal because the company's average annual gross receipts between 1993 and 1995 "far exceed this Department's $16.6 million cap."

On June 19, 1998, Helmark filed suit in this court against DOT and Monge, seeking judicial review of DOT's determination and a declaratory judgment that Helmark is eligible for DBE certification.

### A. *What is Defendants' Position on the Pending Motions?*

In their opening brief, defendants contend that Helmark's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or, in the alternative, that the court should grant summary judgment in favor of defendants pursuant to Rule 56. Defendants argue that Helmark is not eligible for DBE certification because the company does not meet the eligibility criteria established by Congress. "Based on uncontradicted evidence furnished by Helmark and its own accountant, both DelDOT and DOT determined that the firm greatly exceeded the annual receipts cap for the three years preceding its application."

### B. *What is Helmark's Position on the Pending Motions?*

Helmark counters that the court should grant summary judgment in Helmark's favor because both DOT's regulation and DOT's adjudication were unlawful. Helmark argues that neither the statutes authorizing the DBE program, nor the regulations promulgated thereto define the term "gross receipts." Helmark claims that application of DOT's definition of "gross receipts" is arbitrary and capricious, or otherwise unlawful in violation of the APA, 5 U.S.C. §§ 701–706. Further, Helmark contends that DOT's adjudication

of its case was arbitrary and capricious and should be overturned.

## II. *STANDARD OF REVIEW*

In considering whether to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court considers only those facts alleged in the complaint and accepts those facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). When matters outside the pleadings are presented and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6). In this case, defendants filed with their motion the administrative record compiled during DOT's review of DelDOT's denial of Helmark's certification. As a result, defendant's motion will be treated as one for summary judgment.

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Id.* at 323. When deciding a motion for summary judgment, the court views the facts, and all permissible inferences from those facts, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the record could not lead a reasonable jury to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

In an effort to assist business that it determines are disadvantaged, Congress requires a certain level of participation by DBE's in federal transportation programs. For example, the statute authorizing the use of federal highway funds, the Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA"), requires that "not less than 10 percent of the amounts authorized to be appropriated [under this Act] shall be expended with small business concerns owned and controlled by socially and economically disadvantaged individuals." ISTEA, Pub.L. 102–240, tit. 1, § 1003(b)(1), 105 Stat. 1914, 1919 (re-enacted as the Transportation Equity Act for the 21st Century, Pub.L. 105–178, tit. 1, § 1101(b)(1), 112 Stat. 107, 113 (1998)). The statute defines "small business concern" as follows:

> The term "small business concern" has the meaning such term has under section 3 of the Small Business Act (15 U.S.C. § 632); except that such term shall not include any concern or group of concerns controlled by the same socially and economically disadvantaged individual or individuals which has average annual gross receipts over the preceding 3 fiscal years in excess of $16,600,000, as adjusted by the Secretary for inflation.

§ 1101(b)(2)(A), 112 Stat. at 113.[1] The regulations promulgated by DOT to imple-

---

1. Helmark refers to virtually identical language in the Airport and Airway Safety and Capacity Expansion Act of 1987, Pub.L. 100– 223, 101 Stat. 1493 (codified as amended at 49 U.S.C. § 47113 (1994)). The court finds

ment this program provide the same definition of small business concern. *See* 49 C.F.R. pt. 23 (1998).

According to section 3 of the Small Business Act ("SBA"), a small business concern "shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation...." 15 U.S.C. § 632(a). · "Meeting the small business provisions of section 3 of the Small Business Act is but one of two requirements to qualify as a small business concern under the ISTEA." *Betteroads Asphalt Corp. v. United States Dept. of Transp.*, 923 F.Supp. 246, 248–49 (D.D.C. 1996) (holding that business with annual gross receipts in excess of DOT's cap was not eligible to participate as DBE even though it had fewer than 500 employees). Therefore, a business cannot participate as a DBE on federal transportation projects unless (1) it is independently owned and operated and not dominant in its field; and (2) it has average gross receipts of $16.6 million or less over the preceding three years.

In this case, DelDOT determined that Helmark did not qualify for DBE certification because the company's average annual gross receipts exceeded the $16.6 million cap. In its application for re-certification as a DBE in 1996, Helmark reported average annual gross receipts over the preceding three years of $34,166,000. While Helmark concedes that its average gross receipts between 1993 and 1995 far exceed the $16.6 million limit, Helmark contends that it qualifies as a small business concern because its average net income during the same period was less than $3,000,000. Helmark argues that DOT's regulation establishing the $16.6 million cap is unlawful because "gross receipts" is not defined in the regulation and DOT's definition of that term conflicts with the SBA.

■ Helmark's argument is without merit. First, there is no conflict. The

that its analysis of Helmark's claim is the

SBA actually authorizes federal agencies to use a gross receipts cap as one of four alternative methods for categorizing a business as a small business concern. 15 U.S.C. § 632(a)(2)(C)(ii)(II) (providing that size of a business concern may be determined "on the basis of the annual average gross receipts of the business concern over a period of not less than 3 years"). Moreover, the SBA provisions that Helmark argues conflict with DOT's gross receipts cap apply to federal agencies. In this case, DOT's $16.6 million cap was mandated by Congress, not a federal agency.

Even if the gross receipts cap did conflict with the SBA, there is no authority to support Helmark's argument that the Congressionally mandated gross receipts cap would be unlawful. To the contrary, Congress provided that the SBA's requirements would apply "unless specifically authorized by statute." 15 U.S.C. § 632(a)(2)(C). Therefore, Congress was free to establish a different method for categorizing a business as a small business concern when it enacted DOT's program.

■ Furthermore, the statutes and regulations authorizing the DBE program are not unlawful because the term gross receipts is not separately defined. Gross receipts is commonly understood to mean the total amount of money or other consideration received from selling property or from performing services. *See, e.g.,* Black's Law Dictionary 703 (6th ed.1990). Moreover, the administrative record demonstrates that Helmark understood this definition of gross receipts. In its 1996 application for recertification as a DBE, Helmark stated as follows:

A. Specify the *gross* receipts of the firm for the last three (3) years:

| | |
|---|---|
| Year ending—1995 | Total receipts $ 33,400,000 |
| Year ending—1996 | Total receipts $ 30,400,000 |
| Year ending—1997 | Total receipts $ 38,700,000 |

(emphasis in original). Therefore, the court rejects Helmark's argument that the

same under either statute.

466

statutes and regulations establishing the DBE program are somehow deficient because gross receipts is not separately defined.

A party is entitled to summary judgment when there are no material facts in dispute and its position is correct as a matter of law. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Congress required that to participate as a DBE on federal transportation projects, a business must qualify as a small business concern under the SBA and have average annual gross receipts of $16.6 million or less. § 1101(b)(2)(A), 112 Stat. at 113; *see also Betteroads,* 923 F.Supp. at 248–49. In this case, Helmark concedes that its average annual gross receipts exceed $16.6 million. Therefore, DOT correctly determined that Helmark did not qualify as a DBE and defendants are entitled to summary judgment.

The court will issue an order in accordance with this opinion.