Teresa T. DIAZ, and Timothy
J. Hall, Plaintiffs,

v.

**VIRGINIA HOUSING DEVELOPMENT AUTHORITY, and National City Mortgage Co., Defendants.**

Civil Action No. 00–637–A.

United States District Court,
E.D. Virginia.

June 12, 2000.

Barry Michael Parsons, Crowell & Mor-
ing, Washington, DC, for plaintiffs.

Carl F. Bowmer, Christian & Barton, L.L.P., Richmond, VA, Paul Warren Mengel, Vorys, Sater, Seymour & Pease, L.L.P., Alexandria, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

A threshold dismissal motion in this credit discrimination suit raises a question of first impression in this circuit, namely whether the Virginia Housing Development Authority ("VHDA") violates the Equal Credit Opportunity Act ("ECOA"),[1] or Virginia's ECOA,[2] by requiring that joint applicants for a loan under its credit assistance program be related by blood or marriage. Put another way, the question is whether the ECOA, which prohibits credit discrimination on the basis of marital status, nonetheless allows the VHDA to establish a credit assistance program that is available only to moderate and low income joint applicants who are related by blood or marriage.

## I.

Plaintiffs Teresa Diaz and Timothy Hall are an unmarried couple who have shared a household in Virginia for approximately nine years. Defendant VHDA is a political subdivision of the Commonwealth of Virginia; its mission is to attract private capital to provide rental housing assistance and mortgage loans to moderate and low income Virginia residents. VHDA also provides mortgage insurance and loans through various federal loan programs, such as those offered by the Federal Housing Authority ("FHA"). Defendant National City Mortgage Company ("NCM"), an Ohio corporation transacting business in Virginia, offers FHA and VHDA loans to its customers.

In early 1998, plaintiffs became interested in purchasing a house and contacted a realtor to assist them. The realtor suggested they apply for an "FHA Plus" loan, a VHDA loan program for low and moderate income Virginia residents who need down payment assistance. Under this program, a prospective home buyer need only provide 1% of the purchase price of the home as a down payment. Plaintiffs, believing they qualified for the FHA Plus program, met with Noel Smith, a loan officer with defendant NCM, and then completed and submitted a VHDA loan application. Plaintiffs also completed a VHDA-sponsored home ownership educational program, as required. Thereafter, plaintiffs found a house they wished to purchase at 1621 Broadfield Road, Norfolk, Virginia. On February 26, 1998, they entered into a purchase and sale agreement on the Broadfield property, paying $500 earnest money on the home. Closing was scheduled for April 1991.

Two days before the scheduled closing date, Mr. Smith informed plaintiffs that they had been denied the VHDA loan because VHDA's regulations prohibited unmarried couples from receiving loans under the FHA Plus program.[3] Mr. Smith then told plaintiffs that they would have to provide a 5% down payment to obtain financing under a straight FHA loan. When the sellers of the Broadfield house learned of plaintiffs' disqualification from the FHA Plus program, they threatened to sue plaintiffs if the closing did not proceed as planned. Plaintiffs could not meet the five percent down payment requirement, and so to avoid a lawsuit by the sellers, plaintiffs borrowed money from plaintiff Diaz's mother. While plaintiffs were eventually able to obtain the FHA loan, using their savings and the borrowed money, the closing date was delayed and plaintiffs were forced to rent the Broadfield proper-

---

**1.** *See* 15 U.S.C. § 1691 *et seq.*

**2.** *See* Va.Code § 59.1–21.19 *et seq.* The language of the Virginia ECOA is substantially identical to that of the federal statute.

**3.** Plaintiffs also claim that they never received the written notice of this adverse action required by the ECOA.

ty from the sellers until closing could be consummated.

In April of this year plaintiffs filed the instant suit. Their amended complaint states eight claims as follows: (i) unlawful denial of credit in violation of the ECOA for Teresa Diaz (Count I), (ii) unlawful denial of credit in violation of the ECOA for Timothy Hall (Count II), (iii) unlawful failure to provide notice of adverse action to Teresa Diaz in violation of the ECOA (Count III), (iv) unlawful failure to provide notice of adverse action to Timothy Hall in violation of the ECOA (Count IV), (v) unlawful denial of credit in violation of the Virginia ECOA for Teresa Diaz (Count V), (vi) unlawful denial of credit in violation of the Virginia ECOA for Timothy Hall (Count VI), (vii) unlawful failure to provide notice of adverse action to Teresa Diaz in violation of the Virginia ECOA (Count VII), and (viii) unlawful failure to provide notice of adverse action to Timothy Hall in violation of the Virginia ECOA (Count VIII).[4] Defendant VHDA, joined by NCM, now moves to dismiss Counts I, II, V and VI, pursuant to Rule 12(b)(6), Fed. R.Civ.P., on the ground that their refusal to extend credit to plaintiffs was lawful under the exception to the ECOA for credit assistance programs designed to help the economically disadvantaged. *See* 15 U.S.C. § 1691(c)(1).

## II.

■ Dismissal for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., is appropriate where, construing the allegations in the light most favorable to the plaintiff and assuming the facts alleged to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Yet, where a plaintiff colorably states facts which, if proven, would entitle him to relief, a motion to dismiss should not be granted. *See Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir.1982). Accordingly, for the purpose of disposing of this threshold dismissal motion, it is assumed that plaintiffs were qualified for the loan and that they were denied the loan based solely on their marital status. Given this, only a question of law is presented, namely whether a duly authorized credit assistance program may require, consistent with the ECOA, that joint applicants for a loan be related by blood or marriage.

■ Analysis properly begins with the language of the ECOA and its Virginia counterpart. The ECOA and its implementing regulations expressly prohibit discrimination in lending transactions based on marital status. The statute states, in pertinent part, that it is unlawful "for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction ... on the basis of ... marital status." 15 U.S.C. § 1691(a)(1); *see also* 12 C.F.R. § 202.1(b). The Virginia ECOA contains identical language. *See* Va.Code § 59.1–21.21:1(a)(1).[5] Nor is there any doubt that the statutory prohibition against credit discrimination on the basis of marital status is intended to benefit more than unmarried or divorced women;[6] rather, the statute's protective reach also includes unmarried couples. Indeed, all of

---

4. Originally, plaintiffs also stated a claim for punitive damages against the VHDA, but when the VHDA moved to dismiss that claim, it was withdrawn.

5. Both defendants are creditors within the meaning of both statutes, as they both regularly arrange for, extend, renew or continue credit. *See* 15 U.S.C. § 1691a(e) (defining creditor); Va.Code § 59.1–21.21:1(a)(1) (same).

6. *See Markham v. Colonial Mortgage Serv. Co.,* 605 F.2d 566, 568–70 (D.C.Cir.1979) ("[O]ne, perhaps even the main, purpose of the [ECOA] was to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider apart from their husbands as individually worthy of credit").

these groups are intended beneficiaries of the ECOA's prohibition on discrimination on the basis of marital status. *See* 12 C.F.R. § 202.2(n) ("In making credit decisions, creditors may not treat joint applicants differently based on the existence, the absence or the likelihood of a marital relationship between the parties."); *see also Markham*, 605 F.2d at 569 (holding that the plain language of the ECOA prohibited discrimination against unmarried couples). Were ECOA and its Virginia twin to say no more than this, plaintiffs would plainly prevail.

▆▆▆ Yet, the analysis of the question presented cannot end here, as both statutes include a significant exception. Specifically, both statutes provide that it is *not* a violation of the ECOA "for a creditor to refuse to extend credit offered pursuant to ... any credit assistance program expressly authorized by law for an economically disadvantaged class of persons." 15 U.S.C. § 1691(c)(1); Va.Code § 59.1–21.21:1(c)(1). The implementing regulations to the ECOA provide the guidelines for these credit assistance programs. These regulations state that the ECOA "permit[s] a creditor to extend special purpose credit to applicants who meet eligibility requirements under ... any credit assistance program expressly authorized by state or federal law for the benefit of an economically disadvantaged class of persons." 12 C.F.R. § 202.8(a)(1).[7] And, the Official Staff Commentary to the regulations further explains that "[i]n a special purpose credit program, a creditor may consider *a prohibited basis* to determine whether the applicant possesses a characteristic needed for eligibility." 12

C.F.R.Pt. 202, Supp. I at 57 (emphasis added).[8] In sum, while the ECOA prohibits discrimination in credit transactions on the basis of several factors, including marital status, it exempts from this prohibition special purpose credit programs that are authorized by state or federal law and designed to help the economically disadvantaged.

The VHDA operates such a credit assistance program, authorized by state law, for economically disadvantaged Virginia citizens. *See Walsh v. Virginia Housing Development Authority*, 944 F.2d 903, 1991 WL 183560, at * 2 (4th Cir. Sept.20, 1991) (unpublished disposition). The General Assembly of Virginia, in response to a declared need for "sanitary and safe residential housing at prices ... which persons of low and moderate income can afford," [9] passed the Virginia Housing Development Authority Act and authorized the VHDA to "make, undertake commitments to make and participate in the making of mortgage loans, including without limitation federally insured mortgage loans, to persons and families of low and moderate income to finance the purchase of single-family residential housing." Va. Code § 36–55.31(11). To accomplish this, the VHDA established a program to provide single family mortgage loans to persons and families of low to moderate income. *See* 13 Va.Admin.Code § 10–40–10. The program is limited to people who meet certain income requirements and who wish to purchase properties that meet certain sales price requirements. *See id.* Until 1994, the VHDA required that joint applicants for a loan under its credit assistance program be related by

---

7. The ECOA grants the Board of Governors of the Federal Reserve System authority to "prescribe regulations to carry out the purposes of [the ECOA]." 15 U.S.C. § 1691b(a)(1). And, "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

8. An Official Staff Commentary to a regulation is dispositive of that regulation's meaning "unless [it is] demonstrably irrational." *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

9. Va.Code § 36–55.25.

blood or marriage. In 1994, the VHDA modified its regulations to permit loans to be awarded to qualifying unmarried couples. *See* Va.Regs.Reg. Vol. 10, Issue 11 at 2846 (February 21, 1994). Yet, this modification was short-lived, for in 1996, the VHDA re-amended its lending guidelines to prohibit loans and loan assistance to otherwise qualified unmarried joint loan applicants. The 1996 amendment states, in pertinent part, that "[a] single family loan can be made to more than one person *only if* all such persons to whom the loan is made are related by blood, marriage or adoption." *See* 13 Va.Admin.Code § 10–40–30 (emphasis added). It was this eligibility requirement that precluded plaintiffs from receiving the FHA Plus loan for which they had applied, and that plaintiffs claim violates both the ECOA's and the Virginia ECOA's prohibition on discrimination in lending on the basis of marital status.

■ The VHDA's credit assistance program clearly falls within the ECOA's exception for credit assistance programs authorized by state law for the benefit of economically disadvantaged homebuyers. It is undisputed that the program is authorized by state law and benefits low to moderate income persons and families, certainly a category that meets the definition of an economically disadvantaged class of persons. And, a reading of the statute and its regulations reveals that such programs may consider a prohibited basis, such as marital status, to determine whether an applicant "possesses a characteristic needed for eligibility." 12

C.F.R.Pt. 202, Supp. I at 57; *see also Walsh*, 1991 WL 183560 at * 2 ("[A] creditor may refuse to extend credit pursuant to a credit assistance program for the economically disadvantaged if the refusal is required by the program").[10] As the ECOA and its Virginia state counterpart clearly permit state and local authorities to operate their credit assistance programs in this manner, plaintiffs have no legal basis for challenging the VHDA's eligibility requirements, and therefore cannot state a claim against VHDA for unlawful denial of credit.

■ Plaintiffs argue unpersuasively that the ECOA's language and legislative history require a different result. The argument on language finds no support in the text of either the ECOA, or its Virginia counterpart and is, moreover, flatly contradicted by the Federal Reserve Board's authoritative, elucidating regulations. *See* 12 C.F.R. § 202.8(a)(1); 12 C.F.R.Pt. 202, Supp. I at 57. Indeed, were plaintiffs' argument accepted, the effect would be to trivialize or render nugatory the statutory exception of § 1691(c)(1). The exception serves no purpose unless it is to allow entities such as the VHDA to establish credit assistance programs that include certain of the ECOA's prohibited bases as eligibility criteria. To be sure, the exception is not boundless, for as ECOA's drafters well knew, the Constitution stands ready to bar the use of certain prohibited bases in any circumstances.[11] No such constitutional bar exists with respect to marital status, however. Indeed, states

10. While it is clear that state and local agencies, in implementing their special purpose credit programs, may use certain prohibited bases, such as marital status, as eligibility criteria, it is equally clear that the Constitution bars the similar use of other prohibited bases, such as race or sex. *See Pigford v. Glickman*, 185 F.R.D. 82, 85 (D.D.C.1999) (discrimination on the basis of race by the Department of Agriculture in granting loans would violate the Constitution as well as the ECOA). To be valid, a § 1691(c)(1) credit assistance program must comply with all oth-

er state and federal laws. *See* 12 C.F.R.Pt. 202, Supp. I at 61 ("A creditor does not violate [these regulations] when it complies in good faith with a regulation promulgated by a government agency implementing a special purpose credit program under § 202.8(a)(1). It is the agency's responsibility to promulgate a regulation that is consistent with Federal and State law.").

11. *See supra* note 10.

are free to foster the institution of marriage by the use of preferences and they do so.[12] In sum, the challenged VHDA program, which is not unique in considering marital status,[13] is permitted, not prohibited by the ECOA's language and structure and that of its Virginia counterpart as well.

■ Equally unpersuasive is plaintiffs' legislative history argument, in which they claim that the ECOA's legislative history indicates that credit assistance programs were intended to benefit historically disadvantaged groups, or those who, historically, were subject to disparate treatment in credit transactions.[14] Because there is no evidence that married couples generally fall into these categories, plaintiffs argue, the requirement that joint applicants be married does not further the purpose of the credit assistance program. Plaintiffs further argue that once a special credit assistance program is established for the benefit of a certain group, such as low to moderate income persons, the entity operating the program may not then differentiate among members of that group on a basis prohibited by the statute.[15] Both arguments, however, are unpersuasive. Nowhere in § 1691(c)(1), or elsewhere in the ECOA, is there any language limiting the scope of the exception for qualifying credit assistance programs to only those groups shown to be historically disparately treated or disadvantaged. Had Congress intended such a limitation, it could easily have found language to say so. In fact, the language it chose, as elucidated by the Federal Reserve Board's regulations, per-

**12.** For example, under the Virginia Rules of Evidence, private communications between spouses are privileged and a spouse may not reveal such communications in testimony. *See* Va.Code § 8.01–398(a) ("[N]either husband nor wife shall, without the consent of the other, be examined in any action as to any communication privately made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage subsisted."). No such privilege exists for communications between unmarried couples.

In addition, Virginia law prevents one spouse from disinheriting the other spouse by allowing the spouse of the deceased to take an elective share of the estate even if the deceased's will makes no provision for the spouse. (*See* Va.Code § 64.1–13) ("Whether or not (i) any provision for a husband or wife is made in the spouse's will, or (ii) the spouse dies intestate, the surviving husband or wife of a decedent who dies domiciled in this Commonwealth may ... claim an elective share in the spouse's augmented estate."). Again, this provision applies only to married persons.

**13.** At least two federal housing programs also use marital status as an eligibility criteria. Under the single family loan guaranty program of the Department of Veterans' Affairs, the portion of the loan which is entitled to the loan guaranty depends on whether the veteran and non-veteran borrowers are married. *See* 38 C.F.R. § 36.4307. And, the Depart-

ment of Housing and Human Services administers a special purpose credit program for "single family loans," under which a "family" is defined as two or more persons related by blood or marriage or operation of law, who occupy the same unit. *See* 24 C.F.R. Part 235, § 235.1 et seq..

**14.** *See* 121 Cong.Rec. 16740, 16742 (1975).

**15.** In making this argument, plaintiffs rely on the decision of the Third Circuit in *United States v. American Future Systems, Inc.*, 743 F.2d 169, 182 (3d Cir.1984). In *American Future*, the creditors, a private company, developed a special purpose credit program to benefit young people between the ages of 18 and 21, because such people often had difficulty obtaining credit. *See id.* at 178. The creditors operated the program, however, in a manner that discriminated against minorities. *See id.* at 182. The panel found that this practice violated the ECOA because "once the characteristics of the class of beneficiaries are established, a creditor may not discriminate among potential beneficiaries on a prohibited basis." *Id.* at 180. This case is not applicable here, however, because the creditor in *American Future* operated a § 1691(c)(3) program, or a special credit assistance program operated by a private company which, under the statute is subject to rules different from those that govern governmental credit assistance programs, such as the one at issue in this case. *Compare* 15 U.S.C. § 1691(c)(1), *with* 15 U.S.C. § 1691(c)(3).

mits the consideration of otherwise prohibited characteristics in determining eligibility for a duly authorized credit assistance program such as the one operated by the VHDA. *See* 15 U.S.C. § 1691(c)(1); 12 C.F.R. § 202.8(a)(1); 12 C.F.R.Pt. 202, Supp. I at 57. So long as the VHDA is providing credit assistance to economically disadvantaged persons, it may bestow that assistance on whomever it chooses, and prefer some groups over others, provided that it does not violate the Constitution. Plaintiffs no doubt stand ready to advance substantial fairness and public policy arguments in favor of prohibiting Virginia from choosing to prefer married couples over unmarried ones. And, it is doubtless that there are substantial arguments to the contrary. While plaintiffs may disagree with the VHDA's choice in this matter, there is nothing in the ECOA or its Virginia counterpart that prohibits the VHDA from requiring that participants in its loan program be related by blood or marriage. To change this result, resort must be to the Congress or state legislatures, not the courts. Courts should not strain to invent statutory glosses so as to declare victory for one side or another in a public policy debate, where, as here, the battle between the opposing sides has yet to be fought in the Congress or the Virginia General Assembly.

Accordingly, the VHDA's motion to dismiss Counts I, II, V, and VI must be granted. An appropriate order will enter.