**P.J. individually and as a Parent and Legal Guardian of J.J., a Minor, Plaintiff,**

v.

**Curtis GORDON, Judy Artis, Dwight Bernard, Smart School, Inc., the School Board of Broward County, Florida, Defendants.**

**No. 0461230CIV.**

United States District Court, S.D. Florida.

Jan. 24, 2005.

Jorge Emilio Silva, Silva & Silva, Coral Gables, FL, for Plaintiff.

Marylin C. Batista–McNamara, Fort Lauderdale, FL, for Defendants.

### ORDER GRANTING MOTION
### TO DISMISS

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant School Board of Broward County, Florida's, ("School Board") Motion to Dismiss, filed October 19, 2004 ("Motion"). [DE # 9] On November 17, 2004, Plaintiff P.J. filed her response ("Response") in opposition to the School Board's motion. [DE # 18] Subsequently, on December 3, 2004, the School Board filed its reply to Plaintiff's response. [DE # 21]

THE COURT has considered the motion, the pertinent portions of the record, and is otherwise fully advised in the premises. The matter is ripe for disposition.

### Legal Standard

A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957) A motion to dismiss, pursuant to Rule 12(b)(6), tests whether the claimant has properly stated a claim, not whether the plaintiff will prevail on the merits. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*

*v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party." *Id.* at 73, 104 S.Ct. 2229. The threshold is "exceedingly low"for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

Generally, consideration of matters beyond the complaint is improper in the context of a 12(b)(6) motion. "However, when a plaintiff refers to a document in the complaint and that document is central to the plaintiffs claim, then the Court may consider the document as part of the pleadings for purposes of ruling on a motion to dismiss." *Brooks v. Blue Cross & Blue Shield of Fla.,* 116 F.3d 1364, 1370 (11th Cir.1997); *see also Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")

### Background

In the case at bar, P.J, individually and as the parent of J.J., a thirteen year old female, has sued the School Board for negligence based upon the School Board's alleged failure to monitor and supervise the Smart School, a charter school,[1] in its

---

**1.** Charter schools have been called "the newest concept in education reform" and generally operate "by charter or contract, between those responsible for making educational choices at the school level and the governmental entity designated by statute to approve charters." Jennifer T. Wall, *The Establishment of Charter Schools: A Guide to Legal Issues for Legislatures,* 1998 B.Y.U. Educ. & L.J. 69 (1998) Since the State of Minnesota created the first charter school in 1991, the number has multiplied dramatically. *Id.* A to-

hiring, training and supervision of Defendant Gordon, a Smart School employee, and its alleged failure to ensure adequate procedures which would have protected J.J. from his misconduct. Defendant Gordon has been convicted of and sentenced for sexually abusing J.J. while employed by the Smart School as a counselor in its after school program. Plaintiff points to Section 1002.33, the Florida statute authorizing the formation of charter schools and describing the relationship between charter schools and their county school boards, the Smart School's Charter Agreement ("charter") with the School Board, and the common law as the sources of the School Board's legal duty to protect J.J. from Gordon's wrongful conduct. According to the School Board, it should be dismissed from this action because J.J. was enrolled in the Smart School, a charter school, and although the School Board is required by statute and the charter to supervise the Smart School's academic standards and support it financially, neither the applicable statute nor the charter imposes a legal duty on the School Board to monitor, hire, train or supervise the Smart School's employees or to ensure the safety of Smart School students, through the maintenance of adequate procedures or otherwise, and the School Board has no common law duty to do so as it does not manage or have the ability to control the day-to-day activities of the Smart School's employees. Thus, the issue presented by the instant motion is whether the School Board can be held liable for Defendant Gordon's sexual abuse of J.J., based on its alleged failure to monitor and supervise the hiring, training and supervision of the Smart School's employees or the failure to ensure adequate procedures for the protection and safety of the Smart School's students.

### Legal Analysis

As a preliminary procedural matter, the Court has considered P.J.'s argument that she should not consider the terms of the charter in resolving the motion to dismiss because the charter is outside the scope of the complaint. P.J. referred specifically to the charter in her complaint as one source of the alleged legal duty that the School Board owed her daughter. Accordingly, the charter is central to P.J.'s claim and will be considered by the undersigned in disposing of the pending motion. *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1370 (11th Cir.1997); *see also Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")

■ Turning next to the merits of the pending motion, the undersigned also has carefully considered whether Fla. Stat. § 1002.33, the charter, or the common law

---

tal of 42 states, including Puerto Rico and the D.C., have enacted statutes to regulate the 2,695 charter schools that operated in the year 2003 and at which 685,000 students attended. *See* U.S. Charter Schools. Accessible at http://www.uscarterschools.org According to the Florida Department of Education, the State had five charter schools in 1996 but the number grew so rapidly that over 50,000 students were enroled at charter schools in 2002. The same source reported that, as January 2005, there were 301 charter schools in Florida.

Charter schools share two common characteristics: "(1) a charter contract that establishes their authority to exits and binds them to accountability standards; 2) some form of relief from the state statutory and regulatory requirements imposed on traditional public schools." Julie F. Mead, *Devitish Details: Exploring Features Of Charter School Statures That Blur The Public/Private Distinction*, 40 Harv. J. on Legis, 349 (2003). In the case of Florida, Fla. Stat. § 1002.33 provides the legal parameters of school charters.

required the School Board to monitor or supervise the hiring, training or supervision of the Smart School's employees or to "to ensure that the Smart School maintained adequate procedures for ensuring the safety and welfare of its students including the prompt reporting and disciplining related to sexual abuse complaints" as alleged in Paragraph 58 of the Complaint. For the reasons that follow, the Court finds that the School Board had no such duty under the facts alleged in the Complaint and that, therefore the School Board should be dismissed from this action.

### Fla. Stat. § 1002.33

In Paragraph 57 of her Complaint P.J. alleges that Fla. Stat. § 1002.33 is one of the sources of the alleged duties owed to J.J. by the School Board. *See* Pl.'s Comp., ¶ 57 at 11. However, nowhere in the statute does the Florida legislature assign these duties to school boards that sponsor charter schools. The subsection of the statute that expressly delimits the duties of the sponsoring school board reads as follows:

(5) *SPONSOR; DUTIES.*

. . . .

(b) *Sponsor duties.*

1. The sponsor shall monitor and review the charter school in its progress toward the goals established in the charter.

2. The sponsor shall monitor the revenues and expenditures of the charter school.

3. The sponsor may approve a charter for a charter school before the applicant has secured space, equipment, or personnel, if the applicant indicates approval is necessary for it to raise working capital.

4. The sponsor's policies shall not apply to a charter school.

5. The sponsor shall ensure that the charter is innovative and consistent with the state education goals established by s. 1000.03(5).

6. The sponsor shall ensure that the charter school participates in the state's education accountability system. If a charter school falls short of performance measures included in the approved charter, the sponsor shall report such shortcomings to the Department of Education.

Fla. Stat. § 1002.33(5)(b). Thus, nothing in the portion of the statute which purports specifically to describe the sponsoring school board's duties imposes on the School Board the day-to-day responsibility for supervising or monitoring the hiring, supervision or training of the Smart School's staff or ensuring the maintenance of adequate procedures for promoting the safety and welfare of its students. Importantly, the statute contains language which strongly suggests that the sponsoring school board has no such duties. Specifically, subsection (5)(b)(4) provides that "[t]he sponsor's policies shall not apply to a charter school." § 1002.33(5)(b)(4)

Furthermore, other portions of the statute suggest that the School Board owed no such duties to J.J. Subsection (9)(k) provides that "[t]he governing body *of the charter school* shall exercise continuing oversight over charter school operations. § 1002.33(9)(k) (emphasis added) The statute in subsection (12)(a) mandates that "[a] charter school shall select its own employees." § 1002.33(12)(a). Thus, the statute places squarely on the Smart School's governing entity the duty to oversee school operations and to hire its own staff. Moreover, under the statute, charter schools have wide latitude to manage their affairs and are only required to provide an annual progress report to their sponsors. Pursuant to § 1002.33(9)(k), the reporting is limited to two areas: the charter

schools' academic performance and their financial records. *See* § 1002.33(9)(k).

The Court further notes that she has reviewed the available legislative history of Fla. Stat. § 1002.33. Consistent with the statute, it makes clear that the sponsoring school board is charged with ensuring that the charter school participates in the state's accountability system, monitoring the charter school's revenues and expenditures, and monitoring and reviewing the charter school's progress towards the goals established in the charter. However, there is nothing in the legislative history that places the responsibility for the hiring, training and supervision of charter school employees or the implementation of procedures for ensuring the safety of charter school students on any entity other than the charter school's governing body. *See* Staff of Fla. House of Comm. on Educ. K–20, House of Representatives Staff Analysis: HB 55A Charter Schools (May 14, 2003).

In sum, it appears that Plaintiff P.J. has attempted to conflate the School Board's statutory responsibilities for approving the Smart School's charter and monitoring its implementation with the responsibility for the day-to-day management of the Smart School in the areas of hiring, training and supervision of staff and the safety of its student body. However, there is nothing in the statute to suggest that those duties lie with any entity other than the Smart School's governing body. Therefore, to the extent that Count IV is based on Fla. Stat. § 1002.33, it must be dismissed.

### *The Charter Agreement*

█ A charter is defined as "an instrument by which a governmental entity grants rights, liberties or powers to its citizens". Black's Law Dictionary.228 (7th ed.1999). In the context of this case, Fla. Stat. § 1002.33 delegated to the School Board the responsibility for approving the Smart School's charter and then monitoring its progress in meeting its educational goals, its revenues and expenditures, and ensuring its participation in the state's accountability system. Consistent with the statute, the charter is silent with respect to any involvement by the School Board in the day-to-day management of the Smart School. Further, to the extent the charter touches on such topics as student safety and the hiring or supervision of staff, those responsibilities are placed on the Smart School. Notably, in Article 18.0.0–HUMAN RESOURCES, the Smart School agreed with the School Board that it would select its own employees and "implement the practices and procedures for hiring and dismissal ...", and in Article 11–STUDENTS, the Smart School agreed "to maintain a safe learning environment at all times ...". In the chapter dedicated to the Smart School's governance structure, the charter provides that Smart School "will operate as a private employer." (Motion. App. A ¶ 19.2 at 42).

Notwithstanding these terms, P.J. argues that the School Board's duty to monitor the Smart School's progress towards achieving its educational goals somehow placed the duty for supervising the hiring, training and supervision of the Smart School employees and ensuring the adequacy of procedures for the safety of the Smart School's students on the School Board. To make the point, P.J. points to provisions in the charter that require the Smart School to provide the results of all fingerprint reports to the School Board,[2] that require the Smart School to provide the School Board with all minutes required by law and that empower the School Board

---

**2.** According to the Complaint, a fingerprint check of Defendant Gordon would have revealed only that he had an alias of "Fatboy" and had once been charged with resisting arrest without violence. *See* Pl.'s Comp. 5, ¶ 21.

to terminate the charter. Again, what P.J. has done is to conflate the School Board's monitoring responsibilities with day-to-day control over personnel actions and in-school safety. There is simply nothing in the charter that supports that interpretation. Therefore, to the extent Count IV relies on the charter, it will be dismissed.

### *Common Law*

■ Finally, P.J. relies on the common law as the source of the School Board's duty to supervise the hiring, training and supervision of the Smart School's employees and to ensure the safety of the Smart School's student body. P.J. reasons that the principle of duty is linked to the concept of foreseeability and a duty may arise from legislative enactments, judicial interpretations, judicial precedent and "the general facts of the case." *See* Response, at 7.

The Court has already found that neither the statute not the charter imposes such duties on the School Board. Additionally, this Court is aware of no judicial precedent which would do so. As for foreseeability based on the facts of the case, P.J. has not alleged any facts suggesting that the School Board knew or should have known of Defendant Gordon's dangerousness or J.J.'s injuries independent of its statutory and contractual duties to monitor the Smart School, which duties the Court already has rejected as a basis for imposing liability on the School Board. Therefore, P.J.'s common law negligence claim against the School Board also fails. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant School Board's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED.